IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONNA DIANN SMALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-790 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| SUSAN J. SODDY | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Doc. 10) and Defendant's Cross Motion for Summary Judgment (Doc. 14).  The court has considered the motion, the administrative record, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act ("the Act").  Plaintiff

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 7.

also brought claims of discrimination pursuant to 42 U.S.C. § 1981 and the Americans with Disabilities Act (the "ADA") Section 42 U.S.C. § 12101[2] against Susan J. Soddy, the administrative law judge ("ALJ") who decided her case.

**A.   Factual History**

Plaintiff was born on March 25, 1957, and was forty-nine years old at the alleged onset of her disability.[3] As a child, Plaintiff underwent heart surgery and suffered from mental problems related to hearing voices.[4]

Plaintiff protectively applied for disability benefits on April 1, 2011, claiming an inability to work due to heart problems, rheumatoid arthritis, vertigo, hearing problems, and psychological problems.[5] In her application, she identified the date of alleged onset of disability as May 1, 2006.[6] The relevant period for determining Plaintiff's disability status is the period from May 1, 2006, through the date of the ALJ's decision.[7]

**B.  Medical History**

On October 8, 2008, Plaintiff visited Katy Cardiology

---

[2]    See Doc. 1, Pl.'s Compl.

[3]    See Doc. 6, Tr. of the Admin. Proceedings ("Tr.") 135.

[4]    See Tr. 274-75.

[5]    See Tr. 135-36, 161.

[6]    See Tr. 139.

[7]    See Tr. 20.

Associates, where she was evaluated by George Mammen, M.D., ("Dr. Mammen") related to her history of heart problems.[8]  Dr. Mammen noted that Plaintiff had a history of hypertension and heart murmurs.[9]  Plaintiff's examination revealed a grade I-II systolic murmur.[10]  Dr. Mammen assessed Plaintiff with hypertension and pulmonary insufficiency following surgery.[11]  Dr. Mammen renewed Plaintiff's Lanoxin prescription, and additionally prescribed Lisinopril.[12]

On April 14, 2010, Plaintiff returned to visit Dr. Mammen.[13] Dr. Mammen reported that Plaintiff was doing "reasonably well," but noted she complained of depression.[14]  Plaintiff's systolic murmur was unchanged.[15]  Dr. Mammen renewed Plaintiff's prescriptions, and additionally prescribed amlodipine tablets.[16]  Dr. Mammen recommended counseling and a low-sodium diet.[17]

---

[8]    See Tr. 244.

[9]    See id.

[10]   See id.

[11]   See id.

[12]   See id.

[13]   See Tr. 243.

[14]   See id.

[15]   See id.

[16]   See Tr. 244.

[17]   See id.

On December 1, 2010, Plaintiff visited Dr. Mammen.[18] Dr. Mammen noted that Plaintiff's heart had a regular rate and rhythm, but did have a systolic murmur.[19] Dr. Mammen renewed Plaintiff's prescriptions, and recommended a follow-up in one year.[20]

On May 25, 2011, Plaintiff's medical records were reviewed by Patty Rowley, M.D., ("Dr. Rowley").[21] Dr. Rowley found that Plaintiff's allegations and severity of limitations were not wholly supported by the record and recommended that no further work up was necessary.[22]

On April 11, 2011, Plaintiff visited Fort Bend Family Health Center ("Fort Bend Center").[23] Plaintiff's primary complaints were leg and arm pain and hearing loss.[24] Mary Neeley, Ph.D., ("Dr. Neeley") noted that Plaintiff did not report anxiety, depression, or loss of interest.[25] Plaintiff was assessed with shoulder joint pain and anxiety, and was prescribed Meloxicam for pain.[26]

---

[18]   See Tr. p. 240.

[19]   See id.

[20]   See Tr. 241.

[21]   See Tr. 273.

[22]   See id.

[23]   See Tr. 317.

[24]   See id.

[25]   See id.

[26]   See Tr. 319.

Plaintiff returned to Fort Bend Center on April 26, 2011.[27] Plaintiff complained of shoulder pain, temperature intolerance, a headache, and elbow pain.[28] Plaintiff again did not report depression, loss of interest, or feelings of hopelessness.[29] Dr. Neeley requested a Magnetic Resonance Imaging ("MRI") of Plaintiff's shoulder.[30]

Following her application for disability benefits, on April 28, 2011, Plaintiff described her daily activities in a function report.[31] Plaintiff submitted a second function report on September 21, 2011, supplementing her previous report.[32] In the reports, Plaintiff reported that her heart problem, arm pain, vertigo, and blood pressure interfered with her ability to work.[33] She indicated that a normal day involved taking medications, preparing a meal for her son, and taking him to and from his bus stop.[34] Plaintiff reported that she was able to take care of herself, although her joint pain made some activities more difficult.[35] Plaintiff

---

[27]    See Tr. 309.

[28]    See id.

[29]    See id.

[30]    See Tr. 310.

[31]    See Tr. 182-89.

[32]    See Tr. 211-18.

[33]    See Tr. 182.

[34]    See Tr. 183.

[35]    See id.

indicated that she prepared sandwiches, cereal, and other simple meals, often reheating them at a later time.[36]  Plaintiff stated that she was able to do some light cleaning, but that her son helped her with the laundry.[37]

Plaintiff stated on the form that she did not like to go out, and that her daughter would occasionally accompany her when Plaintiff needed to go outside.[38]  She reported that she could pay bills, but did not have a bank account.[39]  Plaintiff stated that she had no hobbies and watched television for entertainment.[40] Plaintiff reported that she rarely met with others socially, but that she would to go to church once a month.[41]

Plaintiff believed that her medical conditions affected all the form's listed abilities, either due to physical or mental restrictions.[42]  Plaintiff admitted that she struggled to deal with stress, and that she did not like change.[43]  Plaintiff stated that she bought a hearing aid that she used every day due to hearing

---

[36]     See Tr. 184, 213.

[37]     See id.

[38]     See Tr. 185, 214.

[39]     See id.

[40]     See Tr. 186.

[41]     See id.

[42]     See Tr. 187, 216.

[43]     See Tr. 188.

6

loss in both ears.[44]  Under current medications, Plaintiff listed digoxin, lisinopril, amlodipine, Prozac, and meloxicam.[45]  Plaintiff did not disclose any side effects from her medications.[46]

On May 19, 2011, Plaintiff returned to Fort Bend Center.[47] Plaintiff's chief complaint was a knot on her elbow.[48]  Plaintiff reported that she had had a panic attack during her scheduled MRI and could not complete the imaging.[49]  Dr. Neeley discontinued Plaintiff's prescription for meloxicam and instead prescribed etodolac to treat Plaintiff's joint pain.[50]

On June 9, 2011, Plaintiff was evaluated by Propsych Testing, where she was examined by Frank A. Fee, Ph.D., ("Dr. Fee").[51]  Dr. Fee found that Plaintiff was oriented to person, place, time, and situation.[52]  He reported no problems with Plaintiff's vision or hearing.[53]  He noted that Plaintiff appeared depressed.[54]  Dr. Fee

---

[44]    See Tr. 217.

[45]    See Tr. 218.

[46]    See id.

[47]    See Tr. 304.

[48]    See id.

[49]    See id.

[50]    See Tr. 305.

[51]    See Tr. 274-77.

[52]    See Tr. 275.

[53]    See id.

[54]    See id.

found that Plaintiff's memory was relatively intact, and her concentration and attention were adequate.[55]  Dr. Fee noted that Plaintiff suffered from depressed mood, becoming tearful several times, although she showed no signs of delusions, hallucinations, or thought disorders.[56]  Dr. Fee evaluated Plaintiff as suffering from a mood disorder, occupational problems, and economic problems, with a global assessment of functioning ("GAF") of sixty.[57]  Dr. Fee opined that Plaintiff would be able to manage her benefits in the event that she was found disabled.[58]

On June 10, 2011, Plaintiff's hearing was evaluated at New Sound Hearing Center.[59]  Plaintiff's air conduction hearing was at best measured thirty decibels in her left ear at 4,000 Hz, and at worst measured slightly under sixty decibels in her right ear at 500 Hz.[60]  Plaintiff's bone conduction hearing was at best twenty decibels at 4,000 Hz in her left ear, and at worst fifty decibels at 500 Hz in her right ear.[61]  Plaintiff was able to recognize ninety-two percent of words in her right ear and ninety-six percent

---

[55]   See Tr. 276.

[56]   See id.

[57]   See id.

[58]   See Tr. 277.

[59]   See Tr. 278.

[60]   See id.

[61]   See id.

in her left ear.[62]

On July 12, 2011, Jean Germain, Ph.D., ("Dr. Germain") performed a psychiatric review technique on Plaintiff.[63]   Dr. Germain noted that Plaintiff had some limitations related to pain and reported an inability to sleep.[64]   Plaintiff disclosed that she had no past hospitalizations for mental health reasons or any significant impairment due to hallucinations or incoherent thought.[65]   Dr. Germain found that Plaintiff suffered mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.[66]   Dr. Germain reported no episodes of decompensation.[67]   Dr. Germain found that there was insufficient medical evidence to establish Plaintiff's disability as of June 30, 2011.[68]

On July 20, 2011, Plaintiff visited Fort Bend Center to renew existing prescriptions.[69]   A nurse advised Plaintiff that she should not take meloxicam with etodolac, and canceled Plaintiff's etodolac

---

[62]   See id.

[63]   See Tr. 279-91.

[64]   See Tr. 291.

[65]   See id.

[66]   See Tr. 289.

[67]   See id.

[68]   See Tr. 291.

[69]   See Tr. 301.

prescription.[70]   On September 8, 2011, Plaintiff returned to Fort
Bend Center in order to renew her meloxicam prescription.[71]

On September 13, 2011, Plaintiff was assessed by psychologist
D. Scott Stanley, Ph.D., ("Dr. Stanley).[72]   Plaintiff reported that
she heard voices when she was alone, and suffered from panic
attacks and depression.[73]   She stated that she avoided crowds and
believed that people were always out to get her.[74]   Dr. Stanley
noted that Plaintiff became tearful on several occasions and showed
difficulty following his questions, although he opined that
Plaintiff's hearing loss may have contributed to her difficulty.[75]
Dr. Stanley observed that Plaintiff displayed a flat affect except
when she became upset.[76]   Plaintiff stated that she had taken Prozac
since 2001, and that it helped her control her panic attacks.[77]   She
denied any hospitalizations for mental issues.[78]

In an assessment completed on September 15, 2011, Dr. Stanley
found that Plaintiff was clinically significant on the schizoid,

---

[70]     See id.

[71]     See Tr. 300.

[72]     See Tr. 336.

[73]     See id.

[74]     See id.

[75]     See id.

[76]     See id.

[77]     See id.

[78]     See id.

10

avoidant, depressive, dependent, self-defeating, paranoid, anxiety, post-traumatic stress, major depression, and delusional disorder scales.[79]   Dr. Stanley opined that Plaintiff's scores and his observations were consistent with a provisional diagnosis of paranoid schizophrenia.[80]   Dr. Stanley recommended that Plaintiff submit to a psychiatric evaluation to confirm his provisional diagnosis, and opined that Plaintiff would be unable to maintain steady employment.[81]   Instead of Dr. Stanley's signature, Dr. Stanley's notes are accompanied by what appears to be Plaintiff's signature.[82]

Starting on October 11, 2011, Plaintiff visited the Texana Center for psychiatric treatment.[83]   Plaintiff reported she occasionally felt depressed, but that Prozac was effective in treating her depression.[84]   Plaintiff was diagnosed with major depressive disorder.[85]

On December 27, 2011, Plaintiff returned to Texana Center and reported that her medication was effective.[86]   Plaintiff reported

---

[79]   See id.

[80]   See id.

[81]   See Tr. 337.

[82]   See id.

[83]   See Tr. 372.

[84]   See id.

[85]   See Tr. 357.

[86]   See Tr. 371.

11

that she had been taking care of her ex-common-law husband and her disabled son.[87]  Plaintiff's case manager emphasized the need to remain compliant with medication and to appear at scheduled appointments.[88]

On March 16, 2012, Plaintiff visited Texana Center.[89] Plaintiff reported that she felt better and that her medication was effective.[90]  Plaintiff's case manager observed that Plaintiff made progress through compliance with her medication.[91]

On June 4, 2012, Plaintiff again visited Texana Center.[92] Plaintiff's case manager noted that Plaintiff was dealing with the death of her ex-husband.[93]

Defendant denied Plaintiff's application at the initial and reconsideration levels.[94]  Plaintiff requested a hearing before an ALJ of the Social Security Administration ("SSA").[95]  The ALJ granted Plaintiff's request and conducted a hearing on September

---

[87]   See Tr. 353.

[88]   See id.

[89]   See Tr. 351.

[90]   See id.

[91]   See id.

[92]   See Tr. 349.

[93]   See id.

[94]   See Tr. 53-54, 71-74.

[95]   See Tr. 79-81.

10, 2012.[96]

**C.**   **<u>Hearing</u>**

Plaintiff, her mother, and a vocational expert ("VE") testified at the hearing before the ALJ.[97]   Plaintiff was represented by an attorney.[98]

Plaintiff testified that she lived with her autistic son, and that her only income was his disability benefits and benefits she received upon the death of her ex-common law husband.[99]   Plaintiff stated that she could read and write and could pay "some" bills.[100] The ALJ noted that Plaintiff had not held a full-time job in the previous fifteen years.[101]

At one point, the ALJ went off the record after Plaintiff did not respond to the ALJ's questions.[102]   Once back on the record, Plaintiff testified that her daughter helped around the house, and visited several times per week.[103]   She also testified that her son went to a school for individuals with autism.[104]

---

[96]      <u>See</u> Tr. 25-52.

[97]      <u>See</u> <u>id.</u>

[98]      <u>See</u> Tr. 27.

[99]      <u>See</u> Tr. 31.

[100]     <u>See</u> Tr. 32.

[101]     <u>See</u> Tr. 33.

[102]     <u>See</u> Tr. 34.

[103]     <u>See</u> <u>id.</u>

[104]     <u>See</u> Tr. 34-35.

Plaintiff testified that she had been bipolar as long as she could remember, that she was schizophrenic, and that she had taken Prozac since 2001.[105]  Plaintiff stated that she had heard voices, but could not say how often she heard them.[106]  She denied that the voices had ever encouraged her to harm herself or others.[107]

Plaintiff testified that she was unable to afford hearing aids, and that she had been turned down for Medicaid benefits.[108] Plaintiff also testified that she had vertigo, although she could not say how often it occurred.[109]  She stated that vertigo episodes could last "up to a week."[110]  Plaintiff also stated that she suffered from arthritis which she rated as a nine on a ten-point-scale.[111]  Plaintiff stated that she spent most of the day "recuperating from her medicine."[112]

The VE was asked if a hypothetical individual with no work experience who could work at any exertion level and was limited to simple, routine tasks, moderate levels of noise, and no hazards or

---

[105]    See Tr. 35.

[106]    See Tr. 38.

[107]    See id.

[108]    See Tr. 40.

[109]    See Tr. 41.

[110]    See Tr. 41-42.

[111]    See Tr. 43.

[112]    See Tr. 44.

14

dangerous machinery, was employable.[113]  The VE responded that such

an individual could work in a hospital kitchen as a dietary aide or

as a product packager.[114]  The VE opined that such an individual

could also work as a housekeeper or cleaner.[115]  When asked if a

hypothetical individual with additional limitations of being unable

to maintain concentration, persistence, or pace or meet attendance

standards, the VE stated that in his opinion, such an individual

was incapable of full-time employment.[116]

     Plaintiff's attorney then questioned Plaintiff's mother.[117]

Plaintiff's mother confirmed that Plaintiff underwent open-heart

surgery as a child and that she still suffered from chest pain and

shortness of breath.[118]  Plaintiff's mother said it was difficult to

assist Plaintiff because she suffered from headaches, loss of

hearing, and vertigo.[119]  Plaintiff's mother testified that either

she or her granddaughter would be able to assist Plaintiff if she

received benefits.[120]

## D.  Commissioner's Decision

---

[113]    See Tr. 46.

[114]    See Tr. 46-47.

[115]    See Tr. 47.

[116]    See Tr. 47-48.

[117]    See Tr. 49.

[118]    See Tr. 50.

[119]    See id.

[120]    See Tr. 51.

On November 16, 2012, the ALJ issued an unfavorable decision.[121]   The ALJ found that Plaintiff met the insured requirements through June 30, 2011, and that she had not engaged in any gainful activity since May 1, 2006.[122]   The ALJ found that Plaintiff suffered from several severe impairments: hearing loss, vertigo, depression, and anxiety.[123]   The ALJ also found Plaintiff's heart murmur and rheumatoid arthritis to be non-severe.[124]   The ALJ found that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any of the listings[125] of the regulations (the "Listings").[126]

The ALJ evaluated Plaintiff's vertigo and hearing loss under Listings 2.07 and 2.10.[127]   Listing 2.07 requires a history of frequent attacks of balance disturbance, tinnitus, and progressive hearing loss demonstrated by caloric or other vestibular tests.[128] Section 2.10 requires hearing loss not treated with a hearing aid with a word recognition score of forty-percent or less in the

---

[121]   See Tr. 10-24.

[122]   See Tr. 12.

[123]   See id.

[124]   See id.

[125]   The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[126]   See Tr. 12-13.

[127]   See id.

[128]   See Tr. 12.

stronger ear.[129]

The ALJ found that the objective medical evidence failed to support Plaintiff's allegations regarding vertigo.[130] Plaintiff was neurologically normal, there was no evidence of any abnormalities in coordination or in the cerebellum, and a May 2011 examination was unremarkable.[131]  Regarding Plaintiff's claims of hearing loss, the ALJ noted that a June 2011 evaluation did not observe any hearing loss and a hearing evaluation completed in June 2011 showed word recognition of ninety-six percent in Plaintiff's stronger ear, and ninety-two percent in her weaker ear.[132]

The ALJ evaluated Plaintiff's depression under Listing 12.04 and 12.06.[133]  In order to meet the Listing criteria, a plaintiff must show at least two of the following: marked impairment activities of daily living, marked difficulties in social functioning, marked difficulties maintaining concentration, persistence, or pace, or repeated episodes of decompensation.[134] The ALJ found that Plaintiff experienced mild limitations in daily living, moderate difficulties in social functioning, and moderate

---

[129]    See Tr. 13.

[130]    See Tr. 16.

[131]    See id.

[132]    See Tr. 17.

[133]    See Tr. 14.

[134]    See id.

difficulties with concentration, persistence, or pace.[135] The ALJ found that Plaintiff had no episodes of decompensation.[136] Accordingly, the ALJ found that Plaintiff's depression failed to meet a Listing.[137]

Considering the record, the ALJ found that while Plaintiff's impairments could reasonably be expected to cause her symptoms, the degree of her symptoms and limitations were not supported by objective evidence.[138] The ALJ found that Dr. Stanley's findings were similarly not supported by the record to the extent they were inconsistent with Plaintiff's treating source, and so gave them little weight.[139] The ALJ noted that no treating physician expressed an opinion regarding Plaintiff's ability to perform work-related functions.[140]

The ALJ found that Plaintiff had no prior work history, but that Plaintiff could perform light-exertion, unskilled jobs.[141] The ALJ found that Plaintiff could work as a dietary aide, hand packager, or cleaner, and that such jobs were available in the

---

[135]    See Tr. 14-15.

[136]    See Tr. 15.

[137]    See id.

[138]    See Tr. 16.

[139]    See Tr. 17-18.

[140]    See Tr. 18.

[141]    See Tr. 19.

regional and national economies.[142]   Thus, the ALJ found that Plaintiff had not been under a disability from May 1, 2006, through the date of the ALJ's decision.[143]

Plaintiff appealed the decision, and, on January 22, 2014, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[144]   After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[145]

In addition to challenging the Commissioner's decision, Plaintiff's complaint included additional claims, including race discrimination under 42 U.S.C. § 1981 ("Section 1981") along with allegations that the hearing violated the ADA.[146]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

---

[142]   <u>See</u> <u>id.</u>

[143]   <u>See</u> Tr. 20.

[144]   <u>See</u> Tr. 1-6.

[145]   <u>See</u> Doc. 1, Pl.'s Compl.

[146]   <u>See</u> <u>id.</u>

## A.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.  <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); <u>see also</u> 42 U.S.C. § 423(d)(5)(A) <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be

20

considered to determine whether [s]he can do other work.
Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20
C.F.R. § 404.1520.  The analysis stops at any point in the process
upon a finding that the claimant is disabled or not disabled.
Greenspan, 38 F.3d at 236.

**B.   Substantial Evidence**

The widely accepted definition of "substantial evidence" is
"that quantum of relevant evidence that a reasonable mind might
accept as adequate to support a conclusion." Carey v. Apfel, 230
F.3d 131, 135 (5th Cir. 2000).  It is "something more than a
scintilla but less than a preponderance." Id.  The Commissioner
has the responsibility of deciding any conflict in the evidence.
Id.  If the findings of fact contained in the Commissioner's
decision are supported by substantial record evidence, they are
conclusive, and this court must affirm.  42 U.S.C. § 405(g);
Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings
exist to support the Commissioner's decision should the court
overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir.
1988).  In applying this standard, the court is to review the
entire record, but the court may not reweigh the evidence, decide
the issues de novo, or substitute the court's judgment for the
Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th
Cir. 1999).  In other words, the court is to defer to the decision

of the Commissioner as much as is possible without making its review meaningless.  Id.

A failure to controvert facts by competent summary judgment evidence may lead the court to accept them as undisputed.  See Fed. R. Civ. P. 56(e).  Summary judgment is not awarded by default because a motion is undisputed.  See Ford-Evans v. Smith, 206 F. App'x 332, 334 (5th Cir. 2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995); John v. State of Louisiana (Board of Trs. for State Colls. and Univs.), 757 F.2d 698, 708 (5th Cir. 1985).  Summary judgment is appropriate only if the moving parties demonstrate the absence of a genuine issue of material fact and show that judgment is warranted as a matter of law.  See Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006); Hetzel, 50 F.3d at 362 n. 3.

### III. Analysis

#### A.  Plaintiff's Section 1981 and ADA Claims

The Commissioner argues that Plaintiff's Section 1981 and ADA claims are barred by sovereign immunity and other statutory restrictions.  Plaintiff has failed to respond to Defendant's motion.

Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916

(5th Cir. 2001).   A district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction.   Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919.   In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint.   John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

Claims against government officials in their official capacity are considered claims against the sovereign.   Danos v. Jones, 652 F.3d 577, 581 (5th Cir. 2011).   A plaintiff may avoid the bar of sovereign immunity if the statute conferring power on the officer is claimed to be unconstitutional or if plaintiff has claimed the officer has taken action ultra vires her authority.   Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-90 (1949); Danos, 652 F.3d at 581-82.   "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."   United States v. Mitchell, 463 U.S. 206, 212 (1983).   In general, a court has no subject matter jurisdiction over claims against the United States unless Congress has specifically granted a waiver of sovereign immunity.   F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

Here, Congress has waived sovereign immunity with respect to

23

a district court's review of a Commissioner's decision under 42 U.S.C. § 405(g).  42 U.S.C. § 405(g) provides that a plaintiff "may obtain a review of [the Commissioner's] decision by a civil action," and may reverse, remand, or affirm the decision of the Commissioner.  It provides that a court "shall review only the question of conformity with such regulations." 42 U.S.C. § 405(g). The court is therefore limited to determining whether the Commissioner applied the proper legal standards and whether substantial evidence supports the decision to deny benefits.  See Greenspan v. Shalala, 38 F.3d at 236.

Further, 42 U.S.C. § 405(h) expressly limits jurisdiction in claims brought under § 405(g), stating that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 United States Code, to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).  Therefore, a plaintiff is barred from bringing other claims, even if immunity from such claims is waived by the government in other circumstances.  See Fabian v. Colvin, No. SA-14-cv-141, 2014 WL 3952803 at *3 (W.D. Tex. 2014).

Additionally, even if Plaintiff had intended to sue the ALJ and the Commissioner in their individual capacities, Plaintiff is barred from doing so. See Schweiker v. Chilicky, 487 U.S. 412, 427 (1988) (holding that a Bivens remedy was unavailable in SSA

24

actions).[147]  Congress did not provide a remedy for monetary damages against individuals in the disability appeal arena, so Plaintiff is barred from recovery against the Commissioner and/or the ALJ in their individual capacities.  See id. at 429.

Congress has explicitly limited Plaintiff's claims against the Commissioner to the review of an adverse finding of disability. Plaintiff's additional claims are beyond the narrow scope provided by Congress to review the Commissioner's decision-making and are thus precluded by sovereign immunity.  The court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's ADA and Section 1981 claims.

### B.  Appeal of the ALJ's Decision

#### 1.  Plaintiff's Motion

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff contends that the ALJ did not follow proper legal procedures and that the ALJ's decision is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ should have found Plaintiff disabled based on the letter prepared by Dr. Stanley, that Plaintiff's impairments

---

[147]    ALJ Soddy has not appeared in this suit.  It appears from Plaintiff's summons and proof of service that Plaintiff served both defendants by personally serving the same individual in the U.S. Attorneys Office, the designated service agent of the Commissioner.  Because there is no evidence supporting the fact that that individual is the service agent of ALJ Soddy, it appears that Soddy was never properly served under Rule 4(e).  Since more than 120 days have passed since Plaintiff filed her complaint, Plaintiff's claims against Soddy would be subject to dismissal under Rule 12(b)(5) even if Plaintiff could establish jurisdiction under Rule 12(b)(1).

established that she was disabled, and that the ALJ's behavior towards Plaintiff showed bias in the ALJ's decision-making. Defendant responds that substantial evidence supports the ALJ's determination and that she is therefore entitled to summary judgment.

Plaintiff argues that the ALJ erred by failing to properly credit the assessment prepared by Dr. Stanley.

Generally, "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." <u>Newton v. Apfel</u>, 209 F.3d 448, 455 (5th Cir. 2000)(internal quotations omitted). Even though the opinion and diagnosis of a treating physician should be afforded considerable weight, "the ALJ has sole responsibility for determining a claimant's disability status." <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (5th Cir. 1995)(quoting <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990)). The ALJ ultimately may give less weight to the medical opinion of any physician when his statements are conclusory, unsupported, or otherwise incredible. <u>Greenspan</u>, 38 F.3d at 237. However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the

26

treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[148]  Newton, 209 F.3d at 448.

Dr. Stanley was not a treating physician, as he examined Plaintiff once in connection with her application for benefits.[149] In his assessment, Dr. Stanley recommended a provisional diagnosis of paranoid schizophrenia, recommended psychiatric evaluation, and opined that Plaintiff was unable to engage in full-time work. The ALJ considered Dr. Stanley's assessment, but found it inconsistent with progress notes from Plaintiff's treating source and thus afforded it little weight. Because it appears that the ALJ had good cause for according less weight to Dr. Stanley's opinion and complied with the applicable regulation, the court rejects Plaintiff's argument that the ALJ erred in not affording it controlling weight.

In any event, Dr. Stanley's opinion that Plaintiff did not have the ability to maintain steady employment is not binding on the ALJ. The ALJ retains the "sole responsibility for determining a claimant's disability status," regardless of the weight afforded the medical opinion and diagnosis of a treating physician.

---

[148]    That regulation is now found at 20 C.F.R. § 404.1527(c)(2)-(6). Like the earlier version discussed in Newton, it requires consideration of (1) the physician's length of treatment and the physician's frequency of examination; (2) the nature and extent of the treatment relationship; (3) the support of the physician's opinion afforded by the medical record evidence of record; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating physician. Id.

[149]    See Tr. 336 (stating that she was referred for assessment by her attorney.)

Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1990).

A medical source's statement that the claimant is "disabled" or "unable to work" does not mean the Commissioner will determine the claimant is, in fact, disabled. Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993)(citing 20 C.F.R. § 404.1527(e)(1)); see also 20 C.F.R. § 416.927(e)(1). The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). Thus, Plaintiff's contention that the ALJ committed legal error in failing to adopt Dr. Stanley's opinion concerning whether Plaintiff was able to work is without merit.

Plaintiff additionally argues that she adequately proved she was disabled as defined under the Act by listing her claimed impairments. However, as discussed above, the ultimate issue of disability is reserved to the ALJ. Claiborne v. Astrue, 255 F. App'x 854, 857 (5th Cir. 2007). Plaintiff does not argue that the ALJ did not consider these impairments, in fact, the record reveals that the ALJ considered all of Plaintiff's impairments but found that none met or equaled a Listing. The court finds the ALJ's conclusions regarding Plaintiff's impairments are supported by substantial evidence.

Additionally, Plaintiff complains that the ALJ engaged in "systematic denial" of benefits of minority applicants and refused

28

to credit Plaintiff's hearing loss during the hearing, "repeatedly referr[ing] to Plaintiff as a liar."[150]

The court will not reverse an ALJ's decision based on general allegations of bias against all claimants of a certain background. See Vail v. Astrue, No. 4:08-cv-3087, 2009 WL 4877121 at *4 (S.D. Tex. 2009).  Instead, the court's inquiry is limited only to the ALJ's actions in the instant case.  See Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007).

The bar for a finding of judicial bias is set high.  "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . ."  Id.

Plaintiff's sole argument that the ALJ exhibited bias in this case is that the ALJ engaged in combative questioning and refused to accommodate Plaintiff's claimed hearing loss.

During the hearing, the ALJ stated, "Your hearing loss is not that severe.  Can you hear me?"[151]  A few minutes later, the ALJ

---

[150]    See Doc. 10, Pl.'s Mot. for Summ. J. pp. 8-10.

[151]    See Tr. 31.

said, "[I]f you're not going to respond to questioning, I'm no longer having a hearing," and briefly went off the record.[152]  Once back on the record, Plaintiff testified without incident, although on several occasions she was reminded to make audible responses to questions.  The court cannot find instances where the ALJ referred to Plaintiff as a liar.

Nothing in the administrative record suggests that the ALJ was biased due to Plaintiff's race.  The ALJ does appear to lose her temper with Plaintiff for refusing to answer questions, but such an action does not reflect the deep-seated antagonism necessary to establish bias.  On the contrary, the ALJ's requests that Plaintiff answer audibly show that the ALJ continued to fully develop the record.  <u>See</u> <u>James v. Bowen</u>, 793 F.2d 702, 704 (5th Cir. 1986) (holding that the ALJ has a duty to fully develop the record).  Plaintiff has failed to establish that the ALJ was biased against her such that a fair judgment would have been impossible.

Having considered Plaintiff's claims, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**.

**2.  Defendant's Motion**

Defendant asserts that the ALJ considered Plaintiff's evidence and properly determined that Plaintiff was never under a disability.

The court recognizes the seriousness of Plaintiff's medical

---

[152]    <u>See</u> Tr. 34.

conditions.   However,  the  court  must  review  the  record  with  an  eye toward  determining  only  whether  an  ALJ's  decision  is  supported  by more  than  a  scintilla  of  evidence.   <u>See</u>  <u>Carey</u>,  230  F.3d  at  135. Here, the court finds there is more than a scintilla of evidence in support  of  the  ALJ's  decision.    Therefore,  the  court  cannot overturn the decision of the ALJ, who is given the task of weighing the  evidence  and  deciding  disputes.   <u>See</u>  <u>Chambliss v. Massanari</u>, 269  F.3d  520,  522  (5th  Cir.  2001).   The  court  finds  that  the  ALJ applied  proper  legal  standards  in  evaluating  the  evidence  and making her determination.   Accordingly, the court **RECOMMENDS** that Defendant's  motion  for  summary  judgment  be  **GRANTED.**

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion  be  **DENIED**  and  Defendant's  motion  be  **GRANTED.**

The   Clerk   shall   send   copies   of   this   Memorandum   and Recommendation  to  the  respective  parties  who  have  fourteen  days from  the  receipt  thereof  to  file  written  objections  thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure  to  file  written  objections  within  the  time  period mentioned  shall  bar  an  aggrieved  party  from  attacking  the  factual findings  and  legal  conclusions  on  appeal.

The original of any written objections shall be filed with the United  States  District  Clerk  electronically.    Copies  of  such objections shall be mailed to opposing parties and to the chambers

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th  day of July, 2015.

_____
U.S. MAGISTRATE JUDGE